Frontier-Kemper Constructors v. Office of Workers' Compensation. Mary Lou Smith, we're happy you're here. Good morning, Your Honor. May it please the Court. I'm Mary Lou Smith, here on behalf of Frontier-Kemper Constructors, Inc. Frontier-Kemper Constructors, Inc. is an independent construction contractor that engages in heavy engineering, including, admittedly, occasionally, working in the coal mine industry. Frontier-Kemper Constructors, Inc. employed Claymont Gradsmith briefly in 2005 in connection with two projects that occurred in West Virginia and Virginia. There's no dispute that Claymont was never employed by Frontier-Kemper Constructors, Inc. for a one-year period. Rather, the theory is that Claymont was employed by a different company, what we call the partnership between Frontier Constructors and Kemper Company, dating back to the 1970s. The evidence that we have concerning Claymont's employment by the partnership in the 1970s consists of Social Security records that don't address either where or exactly what he was doing. They just address the payment of wages that were recorded in his Social Security records. At the time of the 1970s employment, the Black-Long Act, as it then existed, defined an operator in such a way that did not address construction contractors. And as the question arose, specifically whether the law, in effect, at that time, did concern construction contractors, a case was brought and it was decided by a three-judge district court that the Black-Long Law, as it then existed, did not apply to construction contractors. As a consequence, the partnership, Frontier-Kemper, was not a, quote, operator at the time it employed Claymont Gradsmith. The law was subsequently changed in 1978. At that point, the statutory definition was expanded to include construction contractors. However, prior to that time it did not, but going forward it did. We don't have any evidence exactly what Frontier-Kemper Constructors, the partnership, was doing, except for some records we were able to produce that showed that the partnership worked on a project involving Island Creek Coal Company. It was the first project they'd ever worked on. And it's entirely possible Claymont was employed there, although we don't have records. At this point, I want to emphasize we're talking about records from the 1970s. We're not talking about records from 10 or 20 or 30 years ago. We're talking about records from the 1970s. At that point, the company didn't have any reason to believe it needed to maintain records of exactly who it employed and what they were doing for purposes of black lung liability, because the company had every reason to believe it faced no black lung liability. So then the question becomes... When you hired this gentleman in 2005, or when you hire people generally, do you know that you're at risk for earlier benefits or being found a relevant employer or being found a successor employer? Is there some way you can insure yourself against these sort of risks? Because you're claiming that you've been blindsided. Correct. And that's the essence of your claim. And it's something I have some sympathy for, because it goes all the way to the first period of employment was 73 to 74. That's quite a long time ago. And I'm not sure that all companies or people or whatever keep employment records that far back. But I'm just wondering. So there's a risk here that you're going to have to pick up benefits when you take somebody on. Is this an insurable risk? In the construction context, John, I believe it is absolutely not an insurable risk. Why not? Because insurance companies want to have some idea how to quantify who might be at risk, what employee might be at risk. And in the context of construction, you would have to go back forever through an employee's employment history, which as a new employer, you're not privy to their Social Security records going way back. But that can't be. You may be right, but that can't be the reason, because you insure all kinds of things when you don't know, going back, what the employment records were. So that can't be the answer. Except that in construction, with employees moving back and forth, it could be that you could insure that the cost would be beyond anything that an employer would be willing to share. And you have to keep in mind, too, there's an element here. You're suggesting that maybe the company should discriminate against people based on their employment. And I don't believe that legally that would be something that a company would want to get into the business of. I'm not saying it's definitely illegal, but a company might not want to take the risk of saying, how much other coal mine employment have you had? Are you going to be somebody that I don't want to hire because of your history? I think there's a possibility there. But realistically, if the employee was employed back in the 1970s, the company that employed them didn't have any reason to believe they needed to maintain records for the next however many years. And when Frontier Kemper Constructors, Inc. hired the person in 2005, they had no way of knowing whether he had an employment history that would lead to their liability. Well, they're held to knowledge of the laws that existed in 2005. Correct. We are in agreement on that. Correct. And so they knew there was a possible liability for incidents based on prior. Correct. They are aware of that. So did they ask him? You know, you often ask employees, do you have any prior experience? Well, I'm not in a position to say exactly what they asked him, but you have to keep in mind. But the record doesn't show that they did or didn't, right? But what the record does show is that Clement himself apparently didn't consider or acknowledge this employment by the partnership as being part of his coal mine history. When he filled out his application, the application that Frontier Kemper Constructors, Inc. got to see, there was no reference to the employment by the partnership in the 1970s. It would be unlawful. Let's suppose you were to look at this employment application and say, well, we hired this guy back in 73, 74. Here it is, 2005. He's nearing the age of retirement. He's nearing the age of benefit eligibility. We could be on the hook for a substantial amount. But it would be unlawful for you to think in those terms. It would certainly be harsh. I'm not saying it would be unlawful. I'm just saying that a cautious employer would be careful to analyze what kind of liability might arise if he tried to discriminate against someone based on prior employment. But that isn't the case here. It isn't the case that Frontier Kemper Constructors, Inc. had previously employed this claimant. If that were the case, then the company might have some basis for considering what the history was. But you have two issues. One is if the, you very well, you're a good lawyer. I can tell already. So we first have whether the prior employment constituted employment for your client. Correct. So let's just assume for purposes of the second argument that it did. So they did employ him early because it was a successor corporation. We'll just assume for purposes right now. You're not conceding anything. Okay. Assume that it is a successor corporation and that he had worked the requisite enough hours to get years, year to get cover. Okay. Then your argument is, as I understand it, that the liability that he would suffer here was inappropriately retroactive. Correct. Correct. Retroactive of your company. Yes. And that's at least the issue I was trying to get to and I thought Judge Wilkinson was also trying to get to. I'm very interested in it now. And what we're trying to do is to tease out how we're to determine whether that is retroactive or not. Well, when Congress changed the law in 1978, it included specific provisions concerning not only the definition of operator, which was expanded to include construction companies, but also special provisions in the Black Law itself concerning the potential liability of a construction company. One of the provisions said a construction company worker, employer, is considered a minor, quote, the definition of minor, to the extent the employee is exposed to coal dust as a consequence of the employment. This indicated an intention not to hold all construction companies always and everywhere as operators, but only in the specific circumstances where their employee was exposed to coal dust as a result. But how do you answer the director's argument, which is basically that these amendments came down in 1977. And the really critical events took place. It wasn't a question of retroactive liability because the critical events took place after 1977 when you reorganized into FKCI in 1982. And more relevantly, I think, than the reorganization was the fact you're presumed to have knowledge of the law. And the hiring decision was made in 2005. And 2005 is not only after the amendments, but way after the amendments. And you had to be on notice by that time, given the nature of your business, that construction companies were deemed to be operators for purposes of the Black Law benefits. So this is not just a case of every person is presumed to know the law. It's a question of how could you help with knowing the law, given the nature of your business and given the length of time you would have had to live under the amendments. The director plays a little loose with what I would call the corporate language. Frontier Kemper Constructors, Inc. is a corporation that was incorporated separately and apart from anything that the other company named Frontier Kemper was doing. You had a separate incorporation. Later, you had the transfer of assets from the partnership, Frontier Kemper, to the corporation. But you don't dispute the fact that FKCI is covered as a construction company. I do not dispute that. As a mine construction company under the 77 amendments. I don't dispute that it's an operator in the context of a specific employee who is a miner within the statutory definition. That is someone who's engaged in construction and involves coal. So you're a covered employer and he's a covered employee. Potentially. It's a potential coverage issue. Every employee of Frontier Kemper Constructors, Inc. who is engaged in something related to coal mine employment is potentially a Black Law claimant and there's potential liability for that. It's not a foregone conclusion that everybody... Maybe not a foregone conclusion, but you're aware of the potentiality of it. That's fair. Correct. But why doesn't that undercut your retroactivity argument? If you took an action based on the well after the date of the law. If, for example, the classic retroactivity argument would be if in 1980, let's say, you were going to be held liable for benefits for people in coal mine construction before the 1977 amendments. That's a classic retroactivity argument. This seems to me to be lesser given the fact that it was so long after. It's not likely that you're going to find retroactive effects this long after the critical event. Well, that would be true if the government hadn't gone to great efforts to try to find out how this Frontier Camper employment might relate to Frontier Camper Constructors, Inc. far into the future. You have to keep in mind this claimant was a stranger to Frontier Camper Constructors, Inc. Okay. Can I just ask you then? Does your argument on retroactivity rise and fall on the fact that you say that these are two separate corporations and one shouldn't have been incorporated? Is that what you said? Because you keep going back to that. Yes. And I frankly think that that's a question for the agency, and the agency made a factual finding. I think you're on very weak ground with respect to that. But if that's key to your retroactivity argument, and you keep going back to it, so it sounds like it is. I have to distinguish here. There's a distinction between a successor corporation and a successor operator. The statute defines successor operator liability in terms of operators, not in terms of corporations. Okay. So it is key to it. It is key, but it's about successor operators, not successor corporations. Okay. And finally, I don't have much time left here, so I want to touch on one thing. We're leaving it to the ALJ because we say the ALJ is the person in the best position to make these determinations. If you examine, for instance, what the ALJ did in connection with determining the length of claimants' employment, you'll see that the ALJ created essentially an analysis out of whole cloth based on the erroneous belief, for instance, that one month is equivalent to four weeks. But you're saying basically you cannot be a successful operator if you were never an operator. If the prior employer was never an operator, you can't be a successor. You can't be a successor operator if the prior employer was never an operator. Correct. And that is the essence of your point. Correct. That is. I see my time is up. Okay. Well, let's hear from the other side then. Since we've refined that issue with the last question, maybe you could start with that and then go on. Yes, Your Honor. My name is Sarah Hurley. I represent the Director Office of Workers' Compensation Programs, U.S. Department of Labor. And your last point. Can you lower the microphone just a tiny bit? The last point that Frontier Kemper Corporation was not a successor operator to Frontier Kemper Partnerships, that's not correct because when that transaction occurred, that was in 1982. That was after the 1978 amendment clarified what a successor operator was. And they were fully on notice that an operator at that time was liable for coal mine construction or for benefits under the Black Plum Benefits Act. But the statute said nothing about retroactivity, so why would they have been on notice with respect to employment before that change? The statute was changed in 1978 to specifically include coal mine construction companies as operators. So by 1982, they were aware of that 1978 change to the statute. But the employment in this case occurred before then. I guess that's the problem, right? That's true. And what we're looking at in this case is whether the imposition of liability on Frontier Kemper construction companies is impermissibly retroactive. And our position is that it's not impermissibly retroactive. And that's because under the Supreme Court case in Landgraf, you look at whether the provision attaches a new legal obligation to events that have already been completed. And in doing this, you look as to whether there's been fair notice. So are you disputing Ms. Smith's contention that this was a risk that the company could not have insured against? I certainly am. They certainly could have insured against this type of risk. And how would that have worked? By getting insurance coverage for a Black Plum Benefits liability. Which would have covered the period, including the period before the enactment of the amendment? Yeah. If Mr. Smith's coal mine construction work had ended in 1974, we wouldn't have imposed liability on Frontier Kemper Partnership. It would have been over, and we wouldn't have retroactively held them liable. It was only because the events after the amendment in 1978 took place, the successorships created, and the rehiring of Mr. Smith. Those events triggered the one-year liability that's needed for this operator to be held liable under the Black Plum Benefits Act. So it was only when those events occurred that we're imposing liability. But under Landgraf, part of the inquiry is congressional intent. I'm not sure with the 77 amendments, which cover construction workers, was Congress explicit on whether they wanted that to apply purely prospectively or retroactively? There wasn't any explicit recognition? There was no explicit recognition. But in the legislative history, they used the word clarification. They wanted to clarify this provision of the law to set forth the fact that coal mine construction employers were to be held liable for these benefits. But if we can't discern the congressional intent because there's no explicit congressional intent, then the Landgraf inquiry becomes more one of fairness, doesn't it? Absolutely, yes. As to whether it's fair to impose an obligation retroactively. And the question I keep coming back to is if they were never an operator to begin with, then how can we retroactively say you were an operator and impose upon someone an obligation 30 years later? I mean, is that basically fair? Well, in this case, it is. Because I also point out in the 1970s, the law was unsettled as to this point. Most of the case law arose under the Federal Coal Mine Health and Safety Act with safety violations. And there was always the issue of whether coal mine construction companies were liable for those type of violations. And the courts held that they were. Since the Blacklin Benefits Act is part four of the Federal Coal Mine Health and Safety Act, a construction company like Hunter Kemper should have been on notice of the unsettled law at that time. Look, even if they were an operator then or they were associated with the company that existed back then was an operator and it's associated with the company that exists now, then you go to look at whether the increase of the party's liability, Kemper's liability, for past conduct, whether it's increased the party's liability for past conduct. And see, to me, this comes down to does past conduct mean the early employment, which is what your opposing counsel says, or is that not past conduct, but you're imposing liability because of this new conduct that took place after, because there never would have been liability under the Blacklin statute unless you had a full year. So there wasn't liability imposed under the past conduct, but for the fact that you had this future, this conduct that clearly took place after the statute was enacted. But I don't know, since you needed both to have liability, I don't know how we parse that data. I'd be interested in you telling me whether this was because of past conduct or not. I mean, you're obviously going to take the position it wasn't, but without the past conduct there wouldn't have been liability, right? Right. No, I think you need both, and admittedly... Tell us why the past conduct was necessary.  You need those eight and three-quarters months to get the one year. But the fact is the company wouldn't be liable unless it rehired Mr. Smith in 2005, and by that time it knew that as a Coleman Construction Company it needed to insure against this type of liability. So you're arguing that there would have been no liability because of past conduct. Exactly. The liability occurs because there was this conduct that took place after the enactment. That triggered the company's... This is interesting. So the answer to Judge Matsi's good question is really it's an imposition of liability for both past and future conduct, because without the future conduct there would have been no liability, but without the past employment there would have been no liability. So in this rather unusual circumstance where liability is a combination of past and future conduct, what do we do with that in terms of the doctrine of retroactivity? If past conduct was the indispensable sine qua non? Well, the fact that it occurred so long after the statute was amended, the company should have been on notice by engaging in Coleman Construction that it needed to insure against flat-lung benefits liability. And what in the legal landscape at the time put it on notice? Because the statute itself obviously didn't give it that notice, not expressly anyway. The case law. The case law was in flux on this. Influx is not notice. It was unsettled, though. Unsettled is not notice. The Flat-Lung Benefits Act has always covered operators who are engaged in the processing and extraction of coal, and they look at that, and when a Coleman Construction company is digging the shaft down, it's exposing its workers to coal dust on a location that is to be used as a coal mine. Under the statute, as it originally was enacted in 1969, there was an argument that Coleman Construction companies were exposing their workers to the same type of hazards that actual coal miners were exposed to, and they should bear the consequences of that. I find this whole retroactivity question difficult, and I looked at our recent case law, and actually Judge Wilkinson's written a couple of recent opinions on, and in one of those opinions he talks about the long record of congressional concern for the domestic affairs of the military service. In other words, suggesting that there is a common sense functional judgment that this would help the serviceman. And if he did that kind of analysis here, it seems to me that we know a similar long time congressional concern for coal miners. And I'm just wondering how sort of that weighs into our analysis here. Well, you could also, in our brief we analogized it to a provision in the Black Lung Act that covers operator liability in general. It's on 932C. And in that provision, we hold an operator liable for black lung benefits even if the total disability of the miner occurred only in part after post-Black Lung Benefits Act enactment date employment. So that means that Congress was not adverse. So you're suggesting to us we should interpret this the way you're saying, that Congress intended the same thing here. Although, as Judge Diaz keeps saying, it's... Well, as long as there was post-enactment or amendment date employment, it's not unfair. Because the original provision of the act holding the operators liable held them liable even if there was pre-enactment. They only needed one day after 1969 to be a liable operator. So here, even though he had only three months after the 1978 amendment, you add them both together. I mean, the structure of the Black Lung Benefits Act, that provision... Does this lead to an employment policy which discriminates against older workers? Well, I mean, every time a miner comes in for employment, I mean, are they not going to hire a miner if he's got 364 days of employment previously just because having that 365th day will make them liable? I mean, I think you would hire the worker based on his skill, and this man was obviously skilled, and he had skills to offer the employer. I mean, so I don't think the discrimination is really a valid concern here, if at all. So... Okay, I'm not sure I have a... There's the fact that in terms of the fairness, there's the fact that this is such a long time after the fact. Way in here, you're talking about events in 73, 74. I mean, it can cut in your direction because they would have notice at the time of the hiring. It could cut in opposing counsel's direction, because you'd be imposing liability long after the fact. Well, it's an unusual situation. It really doesn't come up that often. But I pointed those two cases we cited from the Seventh Circuit. I mean, they had no problem holding a coal mining construction company's liable when the construction company had employed the coal mining construction worker before and after that amendment. They didn't address retroactivity. But I mean, it kind of goes into the same thing. It's been a long time. We're on notice that coal mining construction companies can be liable for black lung benefits. So to go back to Judge Wilkinson's question about insurance, I think the first things out of your mouth were, or close to it, were that you could insure for black lung liability. And I guess you would be able to insure with all employees, present employees, no matter what their prior history is. Absolutely, yeah. It's the last employer role kind of that we go in, in assigning liability. So it's the last employment. The last employment was crucial here. It was the crucial thing. Okay. Thank you. How often does this, I mean, I haven't seen something like this. When we're talking, to return to what my good colleague Judge Matz made, about the overall congressional intent, is part of the overall congressional intent to cover construction workers diminished somewhat by the fact that there is the black lung benefit, the trust fund that's going to cover the worker in any event. I mean, the worker is not going to be left out in the cold. Yeah, I wondered about that too. Right, the trust fund. So the congressional purpose, for example, is not going to be overturned. If this were a question of the safety net and being destroyed for the worker or the worker's surviving spouse not receiving benefits at all, that would be more of a case for retroactive application. Well, I would just point you to. I mean, it does mitigate the concern, doesn't it? This gentleman is going to receive benefits. Certainly, it does mitigate the concern, but also Congress has expressed the fact that we are supposed to try and find a liable operator to the greatest extent possible to preserve the assets of the trust fund. I mean, if we can find an operator that qualifies, we're tasked to do that. Marguerite, thank you so much. Okay, thank you. May it please the Court. I'm Joe Wolf and I represented Grant Smith through the three levels of administrative law. The first with the director, the ALJ, and the BRB. And perhaps I can clarify this just a little bit. The way that I understand this works is, and I've seen it work, and by the way, coal mine construction in this context is digging like a 30- or 40-foot round hole about 1,200 or 2,400 feet straight down. Very specialized work. It's perhaps far more specialized than coal mining because the entire mining is straight down. They put concrete sleeves down during this process so they don't have rocks or cave-ins from the sides. So it's a very specialized work. In fact, it's very dangerous work too. As part of this case and the work record hinged upon his, I believe it was his brother-in-law getting killed, and he remembered that day and working on the job. But under the law as decided by Ms. Hurley, when a coal miner works for, say, Green Coal Company for 40 years and then goes over and works for Blue Coal Company for one year, that last coal company is liable. Now, if Green Coal Company, and this situation occurred many times back when the Coal Mine Act went into effect, especially after the 72 and 74 amendments, because the first 69 Act, it became an obligation of the Treasury and was paid out of the general fund and transferred over to the operators. But there were many companies that, and I've seen a number in southwest Virginia, for example, that were self-insured through the State Corporation Commission but really had no assets to speak of. And so when other companies bought them out and got their lease and their tipple or whatever they got in the operation, they became liable for those employees' black lung disability. And to that extent, it's a very hard liability, I mean a hard personal liability to the officers. You would recognize, wouldn't you, Mr. Wolfe, that there was a difference. If there hadn't been the employment situation and they were simply going to apply the 77 amendments to impose liability for employment in 72, 73, 73, 74, that that would be a very different case from this one? It could be. But just to simplify this, I don't know that you look at labels so much as this man actually, when he first worked in the 70s, was involved in being exposed to coal dust, and it's any other dust in the mining operation, such as rock dust or silica from sandstone. Understood, but he's going to be covered. Yeah. Oh, he's going to be covered. But I think that... So why wouldn't that be sufficient? Well, representing these coal miners for 42 years, I think I like to see the right thing done. And when a coal company hires somebody or when they buy a company, the attorneys and the coal company knows very well that they have to do due diligence and check out all the... I guess it was a legal transaction that they became a legal successor. They had a duty. Due diligence, number one, when you're buying an entity of any kind, is you check and see if they were covered by a black loan endorsement for a federal black loan. And I just... And it's like a group policy. When you offer coal mine insurance, you take the... You know, many times there's no risk. People work for 40 years and have no sign of a black loan, and we've seen those cases. But there's also a risk you can have someone having a double black loan transplant and requiring millions of dollars. So it's a... I think it's a question. It's just in the industry, it's a due diligence thing. When you hire somebody, you have to do due diligence. When you buy a company, you do due diligence. So in both instances, these red flags were flagged. So it all comes down, in your view, to the fact that they did hire him in 2075. I mean, in 2005. The amendments were on the books. Now, would the due diligence have uncovered the... Oh, certainly. I think they can get his... They can ask for his Social Security work record. They can get his... Go back through those firms. Suppose it is a red flag. Would the due diligence have suggested liability? It should have. It should have been right in their face. So we are... I'm here to ask the court to affirm the decision of the BRB and the judge and the director that have held the company liable. Thank you, Mr. Wolf. Thank you. All right, let's hear from you, Ms. Smith. I want to give you a little bit of history about this insurance issue. As the act was amended in 1972, it provided that any operator in the coal mining business, after June 30, 1973, was required to purchase federal black lung workers' compensation insurance or to qualify with the Department of Labor as a self-insurer. That was a provision in the 1972 act. In 1973, the Association of Bituminous Contractors, which is the organization that represents the coal mine constructors, filed a lawsuit challenging the applicability of the Title IV of the Federal Coal Mine Health and Safety Act to coal mine operators, and they were successful. The government was permanently enjoined. Then in 1978, when the Congress amended the act to include operators, it also provided that coal mine construction companies are not subject to the insurance requirements of the act. They don't have to purchase insurance or qualify as a self-insurer. The idea is that they have to make their own arrangements such as they are. But I want to come back to a point that Judge Motz made, and I'm not sure that you've answered it. It concerns me as well. There's no explicit congressional purpose, but it is clear that what Congress wanted with these 1977 amendments was to cover construction workers. And the reason for it, as Mr. Wolf has explained, is that it's specialized work that involves coal dust exposure to a considerable extent. And you can say, well, the Black Lung Benefits Trust is going to take care of these folks. That's correct. The claimant here has no interest in the outcome. I understand all that. But on the other hand, the basic purpose of the Black Lung Benefits Act and all the amendments that have followed it was to have employers responsible. That's the frontline responsibility. And the disability trust fund is simply a stopgap. And you want those limited funds available when you just can't find out who the last employer was or when the last employer and all the preceding employers are out of business and are defunct. So that Black Lung Benefits Disability Fund has a lot of claims on it because the employment history is not always so certain. And as we know, coal mine operators shut down from time to time for lots of different reasons. So given the purpose of the act and combining the purpose of the act with the reorganization, but more crucially hiring Mr. Smith in 2005, doesn't the hiring decision in 2005, even if it would not by itself impose liability without the 73-74 period, does not the hiring decision itself still, it is still a post-enactment decision taken with full knowledge of the amendments? And when you have actions taken after the relevant legislation, I'm not sure that that's retroactivity. If we say, okay, the amendments were prospective in effect, and they may well be. And here's a prospective action. Well, this goes to the question that Judge Diaz raised about which set of actions are the ones you look at for determining the fairness of the retroactivity. And I would suggest the court, the decision of the Supreme Court in Vardalus v. Holder, which we cite in our brief, discusses where you look, what point in time you look at to determine where the fairness arises. And I would say that the critical place that you look to determine the fairness is back in the 1973-74 employment. And keep in mind that the company that, you know, given the state of the law... Of course, there was no liability, so that's an odd place to look. But I take your point. Yes. Well, that's, as I interpret the Supreme Court's decision, they said that that is, you look back to the activity that occurred before anything happened legislatively that would have affected the results of that activity. And so retrospectively, turning this company into an operator is a violation of the way the court should interpret the law. Can I ask you, just back to the insurance question. Okay. You were talking about the history of insurability, and I guess your point was that there was no requirement for these construction companies to procure insurance back in the 70s. But that's not the question. The question is whether or not the current employer has an obligation to provide insurance, which I think it does, or whether or not that insurance actually covers this particular employee. Again, we have to use the terms carefully. When we're talking about insurance under the Blackmun law, that's a specific thing. There is a rider that goes on insurance policies for coal companies that covers federal Blackmun insurance. Construction companies do not have insurance contracts with that rider associated. When you're talking about insurance, you're not talking about insurance generally. You're talking about a specific Blackmun insurance program. Okay. But I guess my point is, if you were to hire an employee today, and it were to become an issue with respect to Blackmun disease, it would be some insurance coverage with respect to that employee. Is that right? Not necessarily, no. There are many construction companies who essentially take on the risk. So they self-insure. Yes. But there's a requirement one way or the other. There is no requirement under the federal Blackmun law to do that, no. Is there a requirement under some other law? I feel like we have to ask exactly. It's like dealing with my seven-year-old son. He was little. We have to ask exactly the right question. It's because this is a very complicated law. It has a statutory basis. It has extensive regulations. And you can't use these terms loosely because otherwise people end up... Well, you all are diametrically opposed to each other. You say, no, there's no insurance requirement or no ability to insure. The director says, yes. Which one is it? I did not say that there's necessarily no ability to insure. What I'm saying is there is no specific provision in the act that requires an employer, a construction company employer, to have a policy that covers federal Blackmun claims or to qualify as a self-insurer, which again is a specialized program that is administered by the Department of Labor. It's not just something out in the insurance market. Okay. Is there some requirement somewhere in some law, statute, regulation, case law that requires insurance? A construction company for federal Blackmun... Or a client. My client does not have to have an insurance contract. Okay. You heard my question. Yes. There is no requirement. There is no requirement for that. I mean, if the employer has nothing at all, but, you know, assets on hand... Then he's not self-insured. Well, no, in fact... Well, he's not exempt from claims. No, he's not exempt from claims. And if he doesn't have insurance, he's self-insured. Yes, but again, this is a terminology thing. I know I'm sounding like a 7-year-old. I don't mean to. I really didn't mean to insult you, but I just didn't think you were asking the right question. There is a specific program for self-insurance administered by the Department of Labor where you have to apply to be qualified as self-insured. So he doesn't do that. The companies do not have to do that. That's what I'm saying. They do not have to meet that requirement. They do not have to have an official policy covering that. So now the second question is... They are for purposes of... ...did your client have to do any of this? Yes. Did your client do it? Not in the official sense, no. I mean, they're... Well, every company has programs in place to deal with... And then the third question is... ...whatever liability is... ...should your client have done that? The fourth question is on the unofficial sense. Should your client have engaged in that DOL program? I honestly don't believe they could have. They couldn't have qualified for self-insured based on how those programs are administered. Okay. They're designed for coal mine companies, not construction companies. All right. Thank you. Thank you. We will come down to Council and move into our final questions.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Albert Diaz